# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

PATRICE P.,                                    Case No. 2:21-cv-5920

      Plaintiff,                           Marbley, J.
                                               Bowman, M.J.
  v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Patrice P. filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED because it is supported by substantial evidence in the record as a whole.

## I.  Summary of Administrative Record

On December 8, 2017, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging she became disabled due to cognitive issues and right side weakness resulting from a stroke, right shoulder rotator cuff injury, arthritis in her neck, back pain, dizziness, diabetes, high blood pressure and depression. (Tr. 544). Although she initially alleged a disability onset date of May 9, 2016, Plaintiff later amended that date to her 55th birthday in December 2018.[1] (Tr. 470). After her application for benefits was denied

---

[1]Plaintiff previously filed an application for benefits in July 2016, which was denied at the initial level on November 21, 2016. (Tr. 544).

initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an Administrative Law Judge ("ALJ").  At a hearing held on December 17, 2019, Plaintiff appeared with counsel and gave testimony before ALJ Nikki Hall; a vocational expert ("VE") also testified.  (Tr. 495-542).

Plaintiff has a high school education and previously worked in a semi-skilled job as a nursery school attendant. Plaintiff was considered an individual of "advanced age" at 55 years old on her alleged disability onset date (as amended), and remained in the same age category on the date of the ALJ's most recent adverse decision.  She has not engaged in substantial gainful activity ("SGA") since before her alleged onset date.[2]

On January 29, 2020, the ALJ issued an initial adverse written decision.  (Tr. 579-598).  In that decision, the ALJ determined that Plaintiff has the following severe impairments: "tendinosis of rotator cuff/adhesive capsulitis and mild degenerative changes of the AC joint of the right shoulder; carpal tunnel syndrome, moderate on the right and moderate to severe on the left without evidence for radiculopathy nor peripheral neuropathy."  (Tr. 585).  The ALJ also determined that Plaintiff has multiple nonsevere impairments.  (*Id.*)  After determining that no impairments met or equaled any Listing that would entitle Plaintiff to a presumption of disability, the ALJ determined that Plaintiff remained capable of performing light work with the following additional limitations:

> except performing all postural movements occasionally, except never climbing ladders, ropes or scaffolds; work should not require greater than occasional overhead reaching with the right arm and shoulder; work should not require greater than occasional exposure to concentrated levels of extreme vibration or hazards, such as unprotected heights or dangerous moving machinery; work should not require greater than occasional kneeling or crawling as a requirement of the job; work should not require constant handling or fingering as a requirement of the job.

---

[2]Plaintiff testified that she briefly attempted work as a server at a restaurant in 2019, but there is no suggestion that her brief tenure of employment resulted in SGA.

(Tr. 588). Based on the referenced RFC, the ALJ concluded that Plaintiff could continue performing of her past work as a Nursery School Attendant/child care leader and therefore was not disabled. (Tr. 593).

After Plaintiff sought further review before the Appeals Council, the Appeals Council remanded to the ALJ for reconsideration and clarification of several issues. (Tr. 599-604). For example, the Appeals Council noted that the Dictionary of Occupational Titles ("DOT") indicates that the job of Nursery School Attendant requires "*frequent* stooping" but that in her *written* decision, the ALJ limited Plaintiff to "all postural activities occasionally" including stooping. (Tr. 600). The Appeals Council noted some ambiguity in the record insofar as the ALJ's articulated hypothetical to the VE solicited testimony about an individual who could engage in "frequent" postural activities In addition to that discrepancy, the Appeals Council noted an error in the written RFC description of Plaintiff's handling and fingering limitations, as well as in the dates of the disability period under consideration after Plaintiff's amendment of her alleged onset date. (Tr. 601).

After remand, the ALJ conducted an additional telephonic hearing on May 4, 2021,[3] at which Plaintiff again appeared and gave testimony, as did a new vocational expert. (Tr. 462-487). Plaintiff confirmed that she had not engaged in SGA since her first hearing. However, she testified that since her last hearing, she had begun babysitting her eight-month old grandchild while her daughter is away at work. (Tr. 471). On May 11, 2021, the ALJ issued a second adverse decision. (Tr. 10-33).

---

[3]The ALJ initially set a second hearing for March 4, 2021. Although Plaintiff's counsel appeared at that hearing, Plaintiff herself did not. (Tr. 488-494). No substantive testimony was taken. Instead, the ALJ re-convened the follow-up hearing for May 4, 2021. That hearing was held telephonically due to the extraordinary circumstances presented by the COVID-19 Pandemic. (Tr. 13).

In her second decision, the ALJ found the same "severe" impairments as previously determined.  (Tr. 16).  The ALJ also again found multiple nonsevere impairments that "have not been shown to cause more than a minimal limitation on function."  (*Id*.)  Plaintiff's non-severe impairments include: tinnitus of the left ear, hypertension; history of cerebral vascular accident in 2016; hyperlipidemia/hypolipidemia; diabetes mellitus; obesity; microcytic hypochromic anemia; neurocognitive disorder; depressive disorder, not otherwise specified; acute chest pain; acute bronchitis; chronic pain/crepitus of the bilateral knees; chronic lower back pain without sciatica; neck pain; and metabolic syndrome. (*Id*.)  Plaintiff does not dispute the ALJ's determination concerning which impairments were severe, nor does she dispute that none of her impairments, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability.  (Tr. 20).

Considering all of Plaintiff's impairments, the ALJ again determined that Plaintiff retains the residual functional capacity ("RFC") to perform a restricted range of light work, but clarified her non-exertional limitations are as follows:

> no climbing ladders, ropes, or scaffolds; work should not require greater than occasional kneeling or crawling as a requirement of the job and she can perform all other postural movements frequently; work should not require greater than occasional overhead reaching with the right arm and shoulder; work should not require greater than occasional exposure to concentrated levels of extreme vibration or hazards, such as unprotected heights or dangerous moving machinery; and work should not require greater than frequent handling or fingering as a requirement of the job.

(Tr. 21).  Based upon the new RFC as determined and the amended alleged date of disability beginning in December 2018, the ALJ again concluded that Plaintiff could perform her prior work as a nursery school attendant/child care leader. (Tr. 25). Therefore, the ALJ determined that Plaintiff was not under a disability.  The Appeals

4

Council declined further review, leaving the ALJ's second decision intact as the final decision of the Commissioner. (Tr. 1-6).

In this judicial appeal, Plaintiff asserts that the ALJ made three errors: (1) she improperly disregarded the opinions of state agency psychologists; (2) she made inconsistent and unsupported findings concerning upper extremity reaching limitations; and (3) she failed to resolve an apparent conflict between the DOT and the VE's testimony. (Doc. 9).

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial

evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted). *See also Biestek v. Berryhill*, 139 S. Ct.1148, 1154 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an

6

impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job.  42 U.S.C. § 423(d)(1)(A).

### B.  Plaintiff's Claims

Prior to discussing Plaintiff's three claims in detail, the undersigned acknowledges that Plaintiff's amendment of her onset date to her 55th birthday - a date more than two and a half years beyond the date on which she initially alleged disability -  had a profound impact on the relevance of the evidence presented and the potential application of the Medical-Vocational Guidelines or "Grid Rules."  Under Grid Rule 202.06, if an individual of advanced age (55 years or older) is limited to *unskilled* light work, with no transferable skills, she would be presumptively "disabled."  (*See* Tr. 470; Tr. 503-504, counsel's argument at first hearing that Plaintiff can no longer perform her past work and therefore would be disabled under the guidelines).  In the case presented, however, the VE testified that an individual with Plaintiff's RFC would remain capable of performing her prior semi-skilled work as a nursery school attendant, as such work is generally performed in the national economy.[4]  (Tr. 472, 481).  Based upon the VE's testimony that Plaintiff could still perform past work at Step 4 of the sequential analysis, the ALJ had no need to consider the referenced Grid Rule. Plaintiff's claims seek to undermine the determination that she can perform her past work.

### 1.  The ALJ's Assessment of the Mental RFC Opinions

Plaintiff's first claim attacks the ALJ's assessment of the psychological opinion evidence concerning her mental impairments. An examining consulting psychologist and three non-examining agency psychologists all offered opinions concerning Plaintiff's

---

[4]Plaintiff testified that she sometimes would lift children as heavy as 30 pounds (in excess of the light exertional level) during her work as a preschool teacher at the YMCA.  (Tr. 472-73).

mental RFC limitations. The ALJ found the opinions of the examining consultant to be only "partially" persuasive, (Tr. 18), and the opinions of the non-examining consultants to be "not persuasive" (Tr. 24) based in part on the fact that the opinions predated the relevant disability period. The ALJ's analysis is substantially supported and free from error. It is uncontested that medical opinions must relate to the disability period at issue. *See generally, Lorrison v. Berryhill*, No. 18-cv-10289, 2019 WL 1324247, at *6 (E.D. Mich. Mar. 25, 2019) (ALJ's treatment of evidence of disability falling outside the relevant period as less persuasive was appropriate because evidence that "'predate[s] the alleged onset of disability [is] of limited relevance.'") (quoting *Carmickle v. Com'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008)).

Psychologist Dr. Dubey examined Plaintiff on January 22, 2018 – nearly a year prior to her amended alleged onset of disability.[5] (Tr. 1390-1396). At that time, Plaintiff reported that her mood had varied "between ok and depressed since *2005*," more than 13 years prior to her disability onset date. (Tr. 1391, emphasis added). Plaintiff also reported that her current treatment (medication prescribed by her primary care physician) had been effective to improve her symptoms. (Tr. 1391). Dr. Dubey did not observe any difficulties in Plaintiff's memory or concentration during his examination but noted that Plaintiff reported trouble with concentration and short term memory following a stroke in 2015 or 2016.[6] (Tr. 1393). In the section of the report that details findings on flow of conversation, thought processes and comprehension, he describes the quality, speed and rhythm of Plaintiff's speech as "unremarkable." (Tr. 1393). But in a later summary,

---

[5]Dr. Dubey's exam was based upon Plaintiff's *original* disability onset date of March 2016.
[6]The reported onset of symptoms occurred more than three years prior to her onset of disability. Notably, the ALJ found no residual neurocognitive impairment from Plaintiff's nonsevere cerebral vascular accident (stroke).

he describes her speech as "mildly pressured" and as "slow and deliberate in quality." (Tr. 1394).  He found no difficulty in Plaintiff's ability to understand, remember and carry out either simple questions or directions or multi-part questions or directions. (Tr. 1394). He describes her performance on serial 7's as "appropriate," and states that her math skills "are in the average range." (Tr. 1393).  However, in the later summary he notes that "it took extra time" for her to perform the serial 7 task. (Tr. 1394).  Based on the clinical interview, Dr. Dubey estimated her intellectual level of functioning to be in the low average range. (Tr. 1393).  He opined that Plaintiff would have no difficulty in her ability to understand, remember, and carry out either simple instructions or multi-step instructions independently. (*See* Tr. 1395).

In evaluating attention, concentration and pace, Dr. Dubey repeated his opinion that Plaintiff "would be able to maintain persistence and pace to remember and carry out simple instructions independently."  (Tr. 1395).  However, he then stated that "she would not be able to maintain persistence and pace to remember and carry out multi-step instructions independently, as evidenced by cognitive issues, attention and concentration problems." (Tr. 1395; *see also* Tr. 18).  He added that she "would be able to perform these types of tasks with supervision."  (*Id*.)   Last, Dr. Dubey noted that Plaintiff did not report any issues dealing with work pressure and exhibited "stable and calm" behavior in the context of the psychological exam. (*Id*.)   Although he did not observe any trouble in Plaintiff's ability to concentrate, he noted that she reported such trouble since her 2015 stroke, as well as memory issues.  (Tr. 1393).  Despite the lack of clinically observed evidence, Dr. Dubey predicted that Plaintiff "will have some issues dealing with work pressure" based upon "*possible* problems stemming from cognitive issues, attention, and concentration issues leading to associated frustration for the claimant, co-workers, and

supervisors." (Tr. 1395-96; Tr. 18) (emphasis added).  Based upon the reported history, he diagnosed a neurocognitive disorder due to medical etiology and depressive disorder not otherwise specified.

The ALJ discounted Dr. Dubey's opinions because: (1) "the medical opinion is not entirely consistent with the medical evidence of record as a whole"; (2) his opinions concerning Plaintiff's ability to understand, remember, and carry-out multi-step instructions independently were internally inconsistent; and (3) nothing in the overall medical record supports a significant impact on the claimant's mental health/cognitive abilities. (Tr. 18-19).   The ALJ reasoned that despite Plaintiff's report to Dr. Dubey that she had residual cognitive issues from her stroke, she never sought out *any* specialized mental health care, even after her cerebral vascular accident, nor have any of her treatment providers "made any note of concern regarding her mental health or mental/cognitive abilities" <u>during</u> the alleged disability period.  (Tr. 19).  Additionally, the ALJ found no evidence in the more recent and relevant medical record of *any* residual neurocognitive impairment from Plaintiff's cerebral vascular accident. (Tr. 16).  In fact, the ALJ found that Plaintiff's CVA and depressive disorder were both nonsevere conditions that required no mental RFC limitations at all.  (Tr. 17, 19).

The ALJ contrasted Dr. Dubey's pre-disability report with the longitudinal mental health record *during* the relevant period:

> Dr. Dubey has not considered the claimant's mental complaints as of the amended onset date, having evaluated her nearly a year prior to this date. This is notable because, during subsequent treatment, the claimant did not exhibit significant mental abnormalities. For example, on examination in March 2018, the claimant was described as alert and oriented times three. Her memory, judgment and insight were "intact" and her speech was of normal rate and tone. The claimant's examiner observed that her mood and affect were "normal" (Exhibit 19F). The claimant established care with Lower Lights Christian Health Center in October 2019, which is more proximate to the amended alleged onset date than the consultative

examination. Notably, there is no indication that the claimant raised any issues with respect to her mental health. The claimant's Patient Health Questionnaire showed no complaints of depressive symptoms at her October 2019 and November 2019 office visits and no diagnosis of any mental health issue was provided (Exhibits 26F and 29F). Moreover, during her office visits between February 2020 and January 2021, the claimant consistently denied any psychological symptoms. She denied depressed mood, difficulty sleeping, and suicidal ideations. She denied memory loss (Exhibit 30F). The medical evidence of record does not support the allegations with respect to the claimant's mental health/cognitive abilities and no mental limitations were included in the residual functional capacity. Based on the foregoing, the undersigned concludes that the claimant's medically determinable mental impairments of neurocognitive disorder and depressive disorder, not otherwise specified, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere,

(Tr. 19).

Three non-examining agency psychologists offered mental RFC limitations based on Dr. Dubey's report.  On February 8, 2018, Aracelis Rivera, Psy.D. assessed "moderate" limitations in Plaintiff's sustained concentration and persistence. (Tr. 556). She opined that Plaintiff "can perform tasks not requiring sustained, close attention or adherence to stringent deadlines/high production quotas, and "can adapt to a static setting without frequent, unexplained changes." (Tr. 557).  Additional non-examining agency psychologists endorsed identical opinions in May and September 2018. (Tr. 573-574, 1413).  During the hearing, Plaintiff's counsel elicited testimony from the VE that if a claimant were limited to tasks *not* requiring sustained close attention and could not adhere to stringent deadlines, then she could not perform her prior work as a nursery school attendant because that work requires strict attention to the children at all times as well as the meeting of deadlines.  (Tr. 482).

However, the ALJ rejected the referenced mental RFC assessments as "not persuasive" and "not well supported" concerning the relevant disability period.  (Tr. 24). The undersigned finds no error.  None of the non-examining consultants considered the

evidence pertinent to Plaintiff's amended onset date.  The ALJ reasonably explained that all three relied exclusively on Dr. Dubey's outdated report.

> [T]he prior administrative psychological findings are not well supported insofar as they concern the relevant period at issue because the State Agency Psychological Consultants have not considered any of the evidence as of the amended alleged onset date. The prior administrative findings are consistent with the claimant's consultative examination, which, as discussed above, suggested some limitations in concentrating, persisting, or maintaining pace and adapting or managing oneself. However, the prior administrative findings are inconsistent with the more recent treatment evidence, which showed that the claimant had normal mental status examinations. As discussed above, the claimant's Patient Health Questionnaire showed no complaints of depressive symptoms at her October 2019 and November 2019 office visits and no diagnosis of any mental health issue was provided (Exhibit 26F). She denied psychological symptoms during her subsequent office visits between February 2020 and January 2021.

(Tr. 24).

Plaintiff now argues that the ALJ improperly interpreted "raw medical data" when she declined to adopt the RFC limitations concerning sustained close attention and adherence to stringent deadlines.  The ALJ's analysis refutes that assertion.  A mere diagnosis of a neurocognitive disorder by Dr. Dubey in January 2018 did not require the ALJ to assess limitations when there was no evidence to support any limitation during the disability period at issue.  Rather than taking on an inappropriate medical role, the ALJ appropriately weighed the evidence in order to determine how persuasive the psychological opinions were, with particular focus on and discussion of the factors of supportability and consistency as is required under 20 C.F.R. § 404.1527c.  *See*, *generally*, *Coldiron v. Com'r of Soc. Sec.*, 391 Fed. Appx. 435, 439 (6th Cir. 2010) ("An ALJ does not improperly assume the role of a medical expert by weighting the medical and non-medical evidence before rendering an RFC finding.") (additional citation omitted).

12

On the longitudinal record presented, the ALJ's analysis of Plaintiff's mental RFC easily satisfies the "substantial evidence" standard.

### 2.   Physical RFC Findings Related to Plaintiff's Use of her Upper Extremities

Both Plaintiff's second and third claims assert error concerning the ALJ's assessment that Plaintiff is limited to "occasional" overhead reaching but has no other reaching limitations.  If she were limited to "occasional" reaching in all directions, Plaintiff argues she would be unable to perform her past work because the DOT description of nursing school assistant requires "frequent" reaching in all directions.

Like the agency psychologists, non-examining medical consultants also reviewed the record prior to Plaintiff's amended onset date.  Based on the state of the record beginning in February 2018, the consultants identically opined that Plaintiff was limited in her ability to reach with her right arm in front and/or laterally "occasionally", as well as in her ability to reach overhead.  (Tr. 554, 571, 1412).  However, the ALJ found their RFC opinions to be only "partially persuasive" based upon the dates on which they were rendered and the fact that they were based upon several impairments that the ALJ determined to be nonsevere. (Tr. 23-24).  The ALJ reasonably determined that the consultants did not have access to "any of the relevant evidence related to the period at issue," and therefore their opinions "cannot be considered well supported with respect to the evidence between December 25, 2018 and the date of this decision."  (Tr. 24).  Although the ALJ found an overhead reaching limitation, the ALJ rejected any lateral reaching limitation.  Ultimately, the ALJ assessed more restrictive limitations pertaining to

13

carpal tunnel syndrome and osteoarthritic pain and altered the consultants' postural limitations to include some additional restrictions, while eliminating others.[7]

> The undersigned has modified the nonexertional functional limitations as compared to the prior administrative findings. Given that the claimant's knee pain, back pain and obesity are nonsevere impairments, the undersigned has not found that the claimant is limited to occasionally stooping or crouching. However, the undersigned has found the claimant is more limited in kneeling and crawling than indicated by the State Agency Medical Consultants. This is because the claimant would have to use her upper extremities to crawl and she would need to use her upper extremities to help her arise from a kneeling position. The undersigned has not found any limitations with lateral reaching given the claimant has no weakness in her right upper extremity. However, the undersigned has limited the claimant to frequent bilateral handling or fingering due to carpal tunnel syndrome. The undersigned has also limited exposure to vibration because this environment could exacerbate osteoarthritic pain.

(*Id.*)  In short, the ALJ discounted the lateral reaching and other limitations assessed by the consultants because the opinions pre-dated the relevant disability period and were contradicted by more recent evidence.  *See Lorrison v. Berryhill*, *supra*, at *6.

Aside from the rejection of the consultants' opinions on the issue, Plaintiff chiefly asserts that the rejection of a lateral reaching limitation is internally inconsistent with the ALJ's assessment of an "occasional" crawling and kneeling limitation.  In her assessment of a crawling/kneeling limitation, the ALJ cited to Plaintiff's need "to use her upper extremities to crawl and …to help her arise from a kneeling position." (Tr. 24).  Plaintiff hypothesizes that the ALJ's reference constitutes an implicit finding that is functionally equivalent to occasional lateral reaching.   "These same movements of the upper extremities would be required in performing reaching activities below shoulder level."

---

[7]For example, the consultants also found Plaintiff could "frequently" engage in kneeling and crawling, but only "occasionally" stoop and crouch due in part to obesity. (Tr. 554, 571, 1412).

(Doc. 13 at 5, PageID 1718).  She maintains that the ALJ's failure to explain her reasons for not limiting reaching in all directions constitutes reversible error.

In response, the Commissioner challenges Plaintiff's assumption that the ALJ's kneeling/crawling limitation has anything to do with forward reaching.  In contrast to Plaintiff's hypothesis, the Commissioner argues that the activity of rising from a kneeling position requires only pushing and pulling with the arms. (Doc. 12 at 14). Defendant further points out that the DOT description of the nursery school attendant position does not require crawling at all, such that any limitation (and/or alleged inconsistency) relating to crawling is irrelevant.  (*Id.*)

The undersigned agrees with the Commissioner that the kneeling/crawling limitation is not necessarily inconsistent with the lack of a lateral reaching limitation, in part because no authority states that reaching is *required* to arise from a kneeling position.[8]  In context, the ALJ's reference to an upper extremity impairment appears at least as consistent with her bilateral carpal tunnel syndrome as her alleged shoulder impairment  In any event, it is clear that the ALJ gave the Plaintiff the benefit of the doubt in limiting kneeling and crawling to "occasional" based upon upper extremity impairments. But that does not mean that the ALJ was required to grant the same leeway concerning a lateral reaching limitation.

Even if the ALJ's limitation on kneeling/crawling is viewed as inconsistent with the absence of a lateral reaching limitation, any error was harmless on the record presented. The undersigned concludes that the determination that Plaintiff has no lateral reaching

---

[8]Neither Plaintiff nor Defendant cites to any controlling authority regarding the movements *required* to arise from kneeling.  In addition to pushing/pulling, and depending upon the proximity and height of any nearby object used, it is possible one could use overhead reaching to rise.

limitation is substantially supported  First, that assessment is supported by the ALJ's determination of which impairments were severe.  Plaintiff alleged she suffers from multiple impairments that allegedly cause limitations in her ability to use her right arm and shoulder, including right sided weakness residual from a cardio-cerebral vascular event, right shoulder rotator cuff injury, and arthritis in her neck.  (Tr. 22).  She also alleged difficulty because of pain in her wrists, back and neck, and has a history of right shoulder pain.  (*Id*.)  However, the ALJ determined that only some of the alleged impairments were severe, including chronic right shoulder tendinosis of rotator cuff/adhesive capsulitis and mild degenerative changes of the AC joint, plus bilateral carpal tunnel syndrome.  (Tr. 16).  The ALJ discounted allegations of back and neck pain because they were "not buttressed by objective study evidence," and were explicitly denied by Plaintiff at office visits during the relevant disability period.  (Tr. 17).  Additionally, while the ALJ determined that her tendinosis and adhesive capsulitis could cause difficulty "with overhead reaching," her "shoulder complaints predate the period at issue <u>by several years</u>."  (Tr. 22, emphasis added).

In addition, Plaintiff explicitly testified that she had (at most) minimal overhead reaching limitations residual to her shoulder complaints, for which physical therapy prior to her alleged onset of disability had "helped a lot." (Tr. 522).[9]  Although she initially told the ALJ that she can only reach "up so far" with her right arm, she clarified that her remaining impairment translated into minimal overhead limitations with **no lateral reaching limitations**:

---

[9]After the ALJ inquired about any changes to Plaintiff's medical condition between the first and second hearings and heard nothing significant, the ALJ stated she would rely upon Plaintiff's prior testimony. Plaintiff's counsel expressly agreed with that decision. (Tr. 476).

Q: Can you reach above shoulder-level with your right arm?

A: Yeah, I - - yeah. Kind of.

. . .

Q: Okay. Do you have any difficulty reaching out in front of you or to the side with your right arm?

A: No.

(*Id.*) After considering Plaintiff's allegations of more disabling limitations, the ALJ determined that her "statements about the intensity, persistence, and limiting effects of her symptoms… are inconsistent because the evidence does not establish debilitating physical complaints." (Tr. 23).

Apart from the Plaintiff's clear testimony on the issue, the ALJ discussed all relevant medical records, including those that significantly pre-dated the December 2018 alleged onset date. After a 2017 MRI ruled out a torn rotator cuff, Plaintiff's treating physician found impingement with an assessment of "rotator cuff tendinitis of the right shoulder and adhesive capsulitis" with "no significant tearing." At the time, Dr. Long prescribed Voltren gel and physical therapy. (Tr. 22). Dr. Long advised that "if she did not show much improvement over the next several months, manipulation under anesthesia would be considered." (Tr. 22). Plaintiff began physical therapy and achieved a 50 percent reduction in right shoulder pain a year before her alleged onset date. (Tr. 22). Despite reporting continuing pain, she did not seek further treatment during the disability period.

The ALJ noted a lack of evidence of shoulder issues in the months leading up to her alleged disability onset date in December 2018. For instance, during a May 2018 ER visit after a fall, Plaintiff denied any weakness to her extremities. However, the ALJ noted

17

some evidence of carpal tunnel syndrome close in time to her December 2018 onset date, including September 2018 NCV/EMG testing that confirmed bilateral carpal tunnel syndrome.

Appropriately describing relevant records *during* the alleged period of disability, the ALJ noted that Plaintiff "consistently denied muscle weakness, joint pain, or muscle aches" at multiple office visits between February 2020 and January 2021. (Tr. 17). Treatment records specifically showed "normal strength in the upper extremities." (Tr. 21). During an exam in March 2019, Plaintiff was able to move all four extremities well. (Tr. 23). She established care with Lower Lights Christian Health Center in October 2019, where her physical examination "was essentially normal" including all normal extremities. (Tr. 23). In sum, the ALJ accurately summarized Plaintiff's history of right shoulder abnormalities and bilateral carpal tunnel syndrome, but noted that she had undergone only conservative and routine treatment with no "significant pain management, surgery, or physical therapy" *within the relevant disability period*. (*Id.*) Therefore, the ALJ's determination that Plaintiff has no reaching limitations but for "occasional" overhead reaching is substantially supported by the medical record and Plaintiff's own testimony.

### 3. SSR 00-04p and the Alleged Conflict Between DOT and VE Testimony

Again focusing on reaching, Plaintiff's third claim asserts that reversal is required based upon the ALJ's failure to fully comply with SSR 00-04p regarding an "apparent conflict" between the DOT and the VE's testimony. The referenced social security ruling states in part:

> When there is an apparent unresolved conflict between VE… evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE… evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

18

>Neither the DOT nor the VE… evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE … is reasonable and provides a basis for relying on the VE … testimony rather than on the DOT information.

*Id*., 2000 WL 1898704, at *2 (Dec. 4, 2000).

The ALJ expressly inquired and the VE testified that he understood his affirmative obligation to advise the ALJ of any conflict between his testimony and the information in the Dictionary of Occupational Titles.  (Tr. 479).  As stated, the DOT listing for nursery school attendant/child care provider includes a maximum requirement of frequent reaching in all directions.  However, the VE testified that a claimant like Plaintiff who is limited to occasional overhead reaching would still be able to perform the job as it is generally performed at the light exertional level, though not as Plaintiff had previously performed it because she testified to lifting children up to 30 pounds.  (Tr. 481).  The ALJ then asked the VE to review his testimony and compare the DOT listing to the limitations expressed in the hypothetical constructed by the ALJ, and to advise if there were "any conflicts appearing otherwise between the DOT requirements and the hypothetical limitations?"  (Tr. 483).  The VE responded in relevant part: "We talked about overhead reaching. That's really based upon my experience, Your Honor." (*Id*.)   Immediately after the VE's response, the ALJ turned to counsel to ask:  "[A]ny follow-up with the vocational expert?"  (*Id*.)  Counsel responded: "No, Your Honor."  (*Id*.)

The ALJ clearly complied with SSR 00-04p by specifically inquiring if the VE's testimony was consistent with the DOT and by eliciting a reasonable explanation for any apparent inconsistency with the VE's testimony that Plaintiff could perform her past work despite her occasional overhead reaching limitation.  And the ALJ plainly relied on the VE's testimony in concluding that Plaintiff could perform her past work.  (*See* Tr. 25,

stating that VE testified that Plaintiff "could perform the work of a nursery school attendant/child care leader as this work is generally performed," and that ALJ "finds that the claimant is able to perform [the position] as generally performed.").  It is well settled that a VE may rely upon his past experience and not merely the DOT "in evaluating a hypothetical claimants' vocational potential."  *Hepburn v. Com'r of Soc. Sec.*, 2018 WL 1373870 at *2 (S.D. Ohio Mar. 19, 2018) (quoting *Ellison v. Com'r of Soc. Sec.*, 101 Fed. Appx. 994, 96 (6th Cir. 2004)).

Nevertheless, Plaintiff urges this Court to reverse based upon the alleged failure of the ALJ to comply with the following portion of SSR 00-04p:

> When the vocational evidence provided by a VE…is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE …. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

*Id*., 2000 WL 1898704, at *4.  In her opinion, the ALJ describes the VE's testimony as "consistent with …the DOT." (Tr. 25).  Plaintiff argues that statement is erroneous due to the "apparent conflict" between the DOT's description of "frequent" reaching and the VE's testimony.  (Doc. 9 at 16).  In her reply, she argues that the Commissioner's suggestion that the ALJ resolved any apparent conflict amounts to a post hoc rationalization.  (Doc. 13 at 4).  I disagree based upon a careful reading of the ALJ's opinion, SSR 00-4p, and interpretive case law.

The undersigned begins with interpreting the accuracy of the statement that the VE's testimony was "consistent with" the DOT.  Under the heading "Evidence That Conflicts With SSA Policy," SSR 00-04p defines three categories of inconsistencies between the VE's testimony and the DOT: 1) inconsistent exertional levels (i.e., light or medium); (2) inconsistent skill levels (i.e., unskilled or semi-skilled); and (3) inconsistent

transferability of skills. *Id*., 2000 WL 1898704, at *3.  Based upon that express language, courts have suggested that the inconsistency with which SSR 00-04p is most concerned relates to those categories.   Myriad other situations exist in which lesser types of conflict may arise, but such "implied conflicts" are less likely to require reversal.

> [A]ll kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation. Moreover, claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing. Adopting a middle ground approach, in which neither the DOT nor the vocational expert testimony is per se controlling, permits a more straightforward approach to the pertinent issue, which is whether there is substantial evidence supporting the Commissioner's determination that this particular person can do this particular job or group of jobs.

*Carey v. Apfel*, 230 F.3d 131, 146-147 (5th Cir. 2000).

Notably, the "apparent conflict" about which Plaintiff complains in this case is not an actual conflict in exertional level, skill level, or transferability of skills.  SSR 00-04p explains that in reviewing a VE's explanation for an "apparent conflict," an ALJ should consider that the DOT's occupational definitions are intended to be a "collective description" in which "[e]ach occupation represents numerous jobs." *Id.*; *see also Lindsley v. Com'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (quoting SSR 96-9p, 1996 WL 374185, at *10 n. 4 (S.S.A. July 2, 1996) ("An 'occupation' refers to a grouping of numerous individual 'jobs' with similar duties.). Because of the breadth of the DOT descriptions, more specific "[i]nformation about a particular job's requirements" may be available "from a VE's…experience in job placement or career counseling." *Id.*  Moreover, SSR 00-04p explains that the DOT lists "<u>maximum</u> requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." *Id.* at *3 (emphasis added).  Again, SSR 00-04p instructs that a VE

"may be able to provide more specific information …than the DOT."  *Id.*; *see also see Skaggs v. Berryhill*, 2018 WL 4558203, *7 (W.D. Ky. Sept. 21, 2018) (although the vocational expert's testimony departed from information in the DOT, the vocational expert's testimony was appropriate based "on his professional education, training, [and] experience").

> Whereas the Dictionary describes jobs as they are generally performed, an expert is often called upon to explain the requirements of particular jobs, and as such, his deviations from the Dictionary in such testimony do not actually "conflict" with the Dictionary. Many specific jobs differ from those jobs as they are generally performed, and the expert may identify those unique aspects without contradicting the Dictionary.

*Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003) (emphasis added).

The VE here testified that notwithstanding the maximum listed requirement in the DOT of frequent reaching, someone with a limitation to occasional overhead reading could still perform the nursery school attendant job listed in the DOT.   Given the lack of actual conflict with exertional or skill levels, the ALJ reasonably determined that the VE's testimony remained "consistent with" the DOT's categorical description.   *See also Monateri v. Com'r of Soc. Sec.*, 436 Fed. Appx. 434, 446 (6th Cir. 2011) ("neither the Commissioner nor the [vocational expert] has an obligation to employ the DOT.")

However, to the extent that a reviewing court might disagree and find a procedural articulation error in the ALJ's failure to more expressly state that she was crediting the VE's testimony over the maximum overhead reaching requirement listed in the DOT, the undersigned alternatively finds the error to have been harmless. "The majority of the circuits [hold] that the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so."  *Carey v. Apfel*, 230 F.3d at 146.  "The failure to strictly abide by the guidelines in SSR 00-4p does not necessitate reversal where the ALJ's opinion is supported by substantial evidence and the error was harmless."

*Masters v. Astrue*, 2008 WL 4082965, at *2 (E.D.Ky., Aug. 29, 2008).  *See also Shinseki v. Sanders,* 556 U.S. 396, 129 S.Ct. 1696, 1706 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

It remains a claimant's burden at Step 4 of the sequential analysis to show that she can no longer perform her past work.  After the ALJ inquired and the VE responded about any "apparent conflict," Plaintiff was invited to question the VE further but declined to do so.  *See Lindsley v. Commissioner v. Social Sec.,* 560 F.3d 601, 606 (6th Cir.2009) (citing *Martin v. Com'r of Soc. Sec.,* 170 Fed. Appx. 369, 374 (6th Cir.2006) ("Nothing in S.S.R. 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct."); *accord Ledford v. Astrue*, 311 Fed. Appx. 746, 757 (6th Cir. 2008) (affirming where plaintiff failed to develop testimony about alleged conflicts between the oral testimony and the job descriptions in the DOT, and an identified conflict was explained and resolved).

### III.  Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT:** the decision of the Commissioner to deny Plaintiff DIB benefits be **AFFIRMED** because it is supported by substantial evidence in the record as a whole.


 *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

PATRICE P.,                                                   Case No. 2:21-cv-5920

        Plaintiff,                                        Marbley, J.
                                                             Bowman, M.J.

    v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).